SAUNDERS (BANK OF ALEXANDRIA v.).
See Case No. 852.

---

## Case No. 12,373.

### SAUNDERS v. BUCKUP et al.

[1 Blatchf. & H. 264.] [1]

District Court, S. D. New York. April 5, 1831.

SEAMEN—ASSAULT BY MASTER—USE OF DANGEROUS
WEAPON—CONDUCT OF SEAMEN—OBSOLETE
GRIEVANCES—WITNESS.

1. A master cannot justify an assault and battery on a seaman with a dangerous weapon, by showing that the weapon was casually in his hand, and was used by him in a moment of excitement, under circumstances which would have justified some punishment of the seaman.

2. The court, in estimating the amount of damages to be given for an assault and battery, will have regard as well as to the conduct of the libellant as to that of the respondent.

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

3. A court of admiralty discourages actions for damages on account of obsolete grievances.
[Cited in Scull v. Raymond, 18 Fed. 553; Southard v. Brady, 36 Fed. 562.]

4. Where, in a libel for an assault and battery by a master, the mate, who was a witness of the transaction, but was in no way connected with it, was joined as a party to the suit with the master, the court will presume that this was done to render the mate an incompetent witness, and will consider that fact in estimating damages.

This was a libel in personam [by Thomas Saunders against Bartholomew Buckup and another] for an assault and battery committed at sea by a master upon his cook, on the 7th of February, 1827, on a voyage from New York to Vera Cruz. The master was cracking nuts upon the quarter-deck with a light hammer, when word was brought to him that the cook was scuffling with the mate. He ran forward, and discovered, according to the testimony of one of the witnesses, that the cook was overpowering the mate; whereupon he knocked him down with the hammer he had just been using, and which he had still in his hand. The libellant fell immediately, and bled freely from the head, and was, for a few moments, insensible. The wound was said to have been very slight, and he was walking about the deck the same day. The libel was filed on the 6th of October, 1830, against the master and the mate.

Washington Q. Morton and Henry M. Western, for libellant.

George W. Niven, for respondents.

BETTS, District Judge. The libel in this case is extended to great length, and is full of extravagant and declamatory assertions regarding the nature of the injury which is the subject of this suit. Upon these inflamed and exaggerated representations of the libellant, under oath, as to his great wrong and suffering. I had been induced to order the master to be arrested and held to bail in two thousand dollars. The proofs entirely fail to support the libellant's statement, further than to show that an assault and battery was committed upon him with an improper instrument. Though the hammer, which was the implement used in this case, is proved to have been light and small, it was an improper and dangerous weapon to use in such a manner, and the result showed the peril attending the act. It appears that the conduct of the master towards the libellant had been unexceptionable previously to the occurrence, and that he was kind and attentive to him as soon as the injury was inflicted. Moreover, the conduct of the libellant, on the occasion, was highly reprehensible, and deserved punishment. Whatever may have been the origin of the dispute between him and the mate, it was a breach of order and discipline, amounting to mutiny, for him to be engaged, under any circumstances not necessary for his self-defence, in a conflict

with an officer of the vessel. At the same time, a master will not be allowed to exercise undue violence towards his crew, or, most especially, to use improper weapons for the purpose of chastising a seaman, unless under circumstances so urgent as to call for instant and extraordinary measures for the rescue or defence of his under officers. All the testimony shows that, though this was not such a case as would justify the use of a perilous weapon, the master was actuated by no ill-will towards the libellant, and that it was entirely casual that he struck with the instrument used by him. It was not procured for the purpose. It chanced to be in his hand, and was, no doubt, used thoughtlessly, and under the excitement of the moment. There is, also, no proof that the libellant was at all disabled by the blow, beyond the stunning effects of it for the moment; and the fact that he was walking about the deck the same day, after the injury, sustains the testimony of Pell, his own witness, that the wound was otherwise very slight.

If this were all the case, the court might be disposed to inflict severe damages on the master, for example's sake, that it might be understood by men in this important and delicate trust, that they must act cautiously, under the influence of reason, and not of impulse or fear, in applying force to their crew. The master of a ship should acquaint himself accurately with the character of an offence before he proceeds to punish it, and should judge soundly of the degree of force suitable for bringing his men to subordination when they are violating their duties. He must not consider himself entitled, at his mere option, to apply the last degree of violence to a seaman. The court must see that in what he did he was governed by a rational discretion; and the court is always ready to afford him the benefit of the most liberal intendment, to uphold his authority in the varying exigencies attendant upon his duty to his ship's company, his owner, and the mariners who are subjects of his treatment.

There are, however, circumstances in this case which ought to be brought into view in determining the sum in which the master shall be amerced. Although damages are often awarded for the purpose of punishment, yet the court will notice that those damages go into the pocket of the individual who institutes the action; and, unless that consideration is allowed its proper weight, what may be designed as a punishment for the malfeasance of one party, may operate as a reward for the improper conduct of the other. The libellant was, in this case, a wrong-doer. He was amenable to punishment on the spot, and, had he been struck with a rope, or a stick of moderate size, and had the same consequences followed, the court would have held the master, if not wholly justified, yet so far excused, that but

a nominal fine would have been imposed upon him. The kind of weapon used furnishes the whole foundation for the libellant's action. The court has already observed that it was improper and unjustifiable in the master to make use of that weapon; but it is also to be remarked that the preponderance of the testimony is, that the libellant attempts to inflame his damages, and to practice a gross imposition on the court, by exhibiting here an instrument as the same with which the blow was struck. He produces in court a ship-carpenter's or blacksmith's hammer, of two or three pounds weight, having a long handle, and palpably a most dangerous weapon. A brisk blow with it would inevitably beat in a man's head. There is no proof that such a hammer was ever on board the vessel; and the witnesses unite in declaring that they had not seen it, and do not believe the one which the master used was at all of that kind or magnitude. A lady witness says that her little boy, five years of age, was accustomed to crack nuts with the one the master was using. The court is compelled to receive this attempt of the libellant with the more distrust, because of his sworn representations laid before the court to obtain the exorbitant bail ordered in the case. Those sworn statements he did not attempt to support on the trial; on the contrary, his own witness disproved their verity.

Again, the libellant permitted this matter to rest for nearly four years before he brought suit. Had his action been at law, it would have required only a very short time to bar its prosecution, by the statute of limitations. No excuse is assigned for this delay. A jury will, under such circumstances, always consider the suit as raked up to extort money or gratify malicious feelings, and, though bound to give a verdict for the plaintiff, if four years have not elapsed, will rarely go beyond nominal damages. The statute of limitations does not apply to this court as an obligatory law. The Utility [Case No. 16,-806]. But its provisions, as well as the peremptory exceptions of the civil law, are always regarded, in admiralty, in adjusting the equities of parties. Our state statute bars an action for assault and battery after four years. 2 Rev. St. 296. But, by the civil law, such an action was required to be brought within one year. Code, pp. 9, 35, § 5. It is a cardinal rule with this court, not to intermeddle with stale demands, much less to give countenance to actions founded on obsolete quarrels and grievances. The court will presume, that if this suit had been brought on the return of the libellant to this country—(and no reason is assigned in the proofs why he did not return in the same vessel)—it would have been put in possession of a much more accurate and satisfactory account of the whole transaction. The action was delayed for nearly four years, and was then brought against the master and mate. The effect of this mode of prosecuting it is,

to shut out the testimony of the mate, who would be the witness most competent to state the occurrence in all its circumstances. He had no connection with the master in giving the blow which is the gravamen of the suit; and, though he might be liable for an assault and battery which preceded that blow, yet the case affords no explanation of the reason for his being made a party to the action brought for the consequences which followed the blow, and the inference seems warranted, that this was done to preclude his being a witness in behalf of the master.

Under all these circumstances, though I feel constrained to award damages as a reproof to the master for the indiscreet and improper use of the instrument he employed, yet I do not consider this a case in which the libellant is entitled to more than a moderate compensation. Accordingly, I decree that the master pay $10 damages and costs. Decree accordingly.